IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

SUBBA RAO CHALAMALESETTY,

Plaintiff,

vs.

UR M. JADDOU, U.S. Citizenship
and Immigration Services, and
ANTONY M. BLINKEN, Secretary,
U.S. Department of State,

Defendants.

4:22-CV-3182

MEMORANDUM AND ORDER

There are several motions pending in this case, most pertinently a motion for temporary restraining order. Filing 16. The Court will deny that motion, for the reasons explained below.

## BACKGROUND

The plaintiff's initial complaint, filed one month ago, alleged a claim for relief premised on allegedly unreasonable delay in processing the plaintiff's green card application. Filing 1. The plaintiff alleged, more specifically, that there was an unusual surplus of immigrant visas available for FY 2022, but that those visas would disappear, reducing the plaintiff's chances to obtain one of the annually limited number of visas. *See* filing 1; *see generally Bansal v. U.S. Citizenship & Immigr. Servs.*, No. 4:21-CV-3203, 2021 WL 4553017 (D. Neb. Oct. 5, 2021) (raising similar arguments with respect to FY 2021).

Because, according to the plaintiff, the end of FY 2022 was critical, the plaintiff also moved for preliminary injunctive relief, asking the Court to order U.S. Citizenship and Immigration Services (USCIS) and its director, Ur

Jaddou, to process the plaintiff's application before today, or otherwise assign the plaintiff a FY 2022 immigrant visa number. Filing 3. Alternatively, the plaintiff sought to have the Court enjoin the USCIS "retrogression policy," or "reserve" a number of green cards beyond the end of the fiscal year. Filing 3.

In response, on September 16, the government filed an opposition to the motion for preliminary injunctive relief and a motion to dismiss the complaint, asserting that USCIS had, contrary to the plaintiff's allegations, already exhausted the available immigrant visas for FY 2022. Filing 12 at 1. The government also asserted, as relevant, other grounds for concluding that the Court lacked jurisdiction over the plaintiff's claim for relief. *See* filing 12 at 13-16; *see also, generally*, *Bansal*, 2021 WL 4553017, at *4-6.

The plaintiff did not reply in support of the motion for preliminary injunction, or respond to the government's motion to dismiss.[1] Instead, on September 22, the plaintiff filed an amended complaint and motion for a temporary restraining order. Filing 15; filing 16. The amended complaint now asserts a few different claims for relief. The first two are based on allegations that the government has unlawfully withheld processing of green card applications "based on an ultra vires, unlawful, or illegal policy, requiring an immigrant visa to be current or immediately available at the time of approval of the application." Filing 15 at 20-21. The third claim for relief is, again, premised on allegedly unreasonable delay in processing green card applications. Filing 15 at 21.

---

[1] To be clear—the Court is not criticizing the plaintiff for attempting to plead over the motion to dismiss instead of responding to it. That's a plaintiff's right. *See* Fed. R. Civ. P. 15(a)(1)(B). The Court notes it only because it's part of determining what issues remain live based on the amended pleading.

The motion for temporary restraining order asks the Court to enjoin the government from, effective tomorrow, using its "retrogression policy" to suspend the plaintiff's visa application by virtue of shifting the "priority date" for processing applications as set forth in the State Department's "Visa Bulletins."[2] Filing 16. The government objects to the motion for a temporary restraining order. Filing 19. The Court agrees with the government.

## TEMPORARY INJUNCTIVE RELIEF

When deciding whether to issue a temporary restraining order or a preliminary injunction, the Court weighs the four *Dataphase* factors: (1) the probability that the movant will succeed on the merits, (2) the threat of irreparable harm to the movant, (3) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties, and (4) the public interest. *Johnson v. Minneapolis Park & Recreation Bd.*, 729 F.3d 1094, 1098 (8th Cir. 2013) (citing *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc)). No single factor is dispositive, and the

---

[2] The Visa Bulletin summarizes the availability of immigrant numbers for each month, indicating when immigrant visa applicants should be notified to assemble and submit required documentation to the National Visa Center. In other words, it tells potential visa applicants when they can apply for each category of visa: People seeking to file applications for adjustment of status with USCIS must use the charts contained in the Bulletin to determine when they can file their applications. If the demand reported by consular officers for visas in a particular category can be satisfied by the number of visas available, the category is listed as "current" and applications are open. But if demand is higher than supply (as is often the case), the Bulletin includes a final action date for the oversubscribed category and only applicants with a priority date earlier than the final action date may submit applications. A "retrogression" occurs when the date moves backwards because availability has declined.

burden is on the movant to establish the propriety of the remedy. *Baker Elec. Co-op., Inc. v. Chaske*, 28 F.3d 1466, 1472 (8th Cir. 1994).

LIKELIHOOD OF SUCCESS ON THE MERITS

In deciding whether to grant a preliminary injunction, likelihood of success on the merits is the most significant factor. *Laclede Gas Co. v. St. Charles Cty.*, 713 F.3d 413, 419-20 (8th Cir. 2013). A party seeking injunctive relief need not necessarily show more than a 50 percent likelihood that it will prevail on the merits. *Planned Parenthood Minnesota, North Dakota, South Dakota v. Rounds*, 530 F.3d 724, 731 (8th Cir. 2008). But the absence of a likelihood of success on the merits strongly suggests that preliminary injunctive relief should be denied. *Barrett v. Claycomb*, 705 F.3d 315, 320 (8th Cir. 2013). And the Court finds little likelihood of success on the merits here.

And as the Court has previously explained, the Court questions its own jurisdiction to review the decision to issue (or not issue) a green card, because that's a discretionary decision insulated from the Court's review by the Immigration and Naturalization Act and the Administrative Procedure Act. *Bansal*, 2021 WL 4553017, at *5-6. The Court has also found, based on the factors articulated in *Telecomms. Rsch. & Action Ctr. v. F.C.C.*, 750 F.2d 70, 80 (D.C. Cir. 1984), "little likelihood that the plaintiff would succeed in showing unreasonable agency delay, even if the Court had jurisdiction to consider the claim." *Bansal*, 2021 WL 4553017, at 9.

IRREPARABLE HARM

Nor has the plaintiff shown a likelihood of irreparable harm. A preliminary injunction cannot issue without a showing of irreparable harm. *Dataphase*, 640 F.2d at 114 n.9. To show a threat of irreparable harm, the movant must show that the harm is certain and great and of such imminence

that there is a clear and present need for equitable relief. *Roudachevski*, 648 F.3d at 706. Stated differently, the harm "must be actual and not theoretical." *Packard Elevator v. I.C.C.*, 782 F.2d 112, 115 (8th Cir. 1986).

And here, even if the plaintiff's priority date is retrogressed, the Court has been presented with no reason to believe that the plaintiff's place in line has changed. The government represents that retrogression doesn't change the plaintiff's place in the queue, filing 19 at 3, and the Court is aware of nothing suggesting otherwise. The Visa Bulletin simply addresses when an applicant can submit their documentation to the National Visa Center—it doesn't clearly address the status of pending applications. And that brings the Court back to whether the plaintiff has shown that irreparable injury is *likely* in the absence of an injunction. *Winter v. Nat. Res. Defense Council, Inc.,* 555 U.S. 7, 22 (2008). The Court finds no reason to believe that tomorrow, the plaintiff's *actual* status will be affected in any way. New applicants with priority dates in the retrogressed period won't be allowed to get in line for adjustment of status, but nothing before the Court demonstrates that the plaintiff will be kicked out of the line they're is already in.

BALANCE OF HARMS AND PUBLIC INTEREST

Finally, the Court must consider the balance of harms between the parties, and the public interest. *See Dataphase*, 640 F.2d at 114. Because a preliminary injunction is an extraordinary remedy never awarded as of right, the Court must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief. *Winter*, 555 U.S. at 24.

But even if some injury to the plaintiff is conceded, the public interest weighs against the Court's interference. The plaintiff is essentially asking the Court to be treated differently from thousands of other similarly situated

applicants because the plaintiff decided to sue. It's difficult to even imagine, however, the disruptive effect on the courts and the immigration system of permitting litigious plaintiffs to reserve visas or "cut in line" ahead of other applicants, because *every* potential immigrant would have to protectively become a litigant. In the absence of any showing that *this plaintiff* is distinguishable from any other hopeful immigrant in the admittedly regrettable backlog of applications, then the Court cannot help but conclude that the public interest would be ill-served by *ad hoc* judicial intervention.

## REMAINING MOTIONS

For the sake of completeness, the Court will address the status of the other pending motions in this case. It appears to the Court that the plaintiff's motion for preliminary injunctive relief has been mooted by the superseding amended complaint—the relief sought by that motion related to the purported disappearance of immigrant visas at the end of FY 2022, and that claim appears to have been abandoned.

The Court is less clear about the government's motion to dismiss, because some of the government's jurisdictional arguments may remain live. But in this area of law, even jurisdictional arguments can depend on subtle differences between theories of recovery and relief sought—and, because the plaintiff sought to plead over the motion to dismiss, the plaintiff has yet to squarely confront the government's jurisdictional challenges. The Court concludes that the better approach is to deny the motion to dismiss as having been mooted by the filing of an amended complaint, to permit the government to (if it wishes) respond specifically to the amended complaint.

IT IS ORDERED:

1.      The plaintiff's motion for temporary restraining order (filing 16) is denied.

2.      The defendant's objection (filing 19) is sustained.

3.      The plaintiff's motion for preliminary injunction (filing 3) is denied as moot.

4.      The defendant's motion to dismiss (filing 10) is denied as moot.

Dated this 30th day of September, 2022.

                                        BY THE COURT:

                                        John M. Gerrard
                                        United States District Judge